IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LARRY ROBERTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-2163-JWL |
| | ) | |
| WADDELL & REED, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Larry Robertson brings claims against his former employer, defendant Waddell & Reed, Inc., alleging that defendant discriminated against him on the basis of his age in terminating his employment, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 *et seq.*  This matter presently comes before the Court on defendant's motion for summary judgment (Doc. # 26).  For the reasons set forth below, the Court **grants** the motion and awards summary judgment in favor of defendant on all claims.

## I.    **<u>Facts</u>**[1]

Defendant hired plaintiff in 1998, at age 58, as its chief pilot and manager of its aviation department.  Plaintiff was told at that time that he could work as long as he wanted and that he could name his successor when he chose to retire. A few years later, John Sundeen became plaintiff's direct supervisor.  In succeeding years, plaintiff received positive performance reviews and bonuses.  In 2004, defendant reprimanded plaintiff for failing to manage properly a subordinate pilot, Cindy Foster.  In May 2005, the CEO who had hired plaintiff was replaced.

In late 2005 or early 2006, plaintiff discussed with Mr. Sundeen perceived attitude problems of two pilots in the department, Wayne Walker and Jeff Baack.  Plaintiff decided to issue the pilots disciplinary letters.  Plaintiff's draft letter to Mr. Walker contained only three sentences and stated that Mr. Walker's attitude and performance, if not improved, could affect his continued employment.  Mr. Sundeen did not approve of plaintiff's draft letters and instructed plaintiff to have defendant's legal department review and revise the letters.  The legal department provided form letters in which plaintiff could insert specific complaints, and plaintiff issued the letters in late January 2006 as directed.  The revised letter to Mr. Walker comprised a full page and threatened discipline, including the loss of the captain title and discharge.

---

[1]In accordance with the applicable standards for summary judgment, set forth below, the facts are related in the light most favorable to plaintiff, the non-moving party. Additional facts are related within the discussion of particular issues.

Mr. Walker disagreed with plaintiff's reasons for the reprimand, and he complained to defendant's Human Resources (HR) department.  HR Vice President Bill Howey investigated Mr. Walker's complaint by interviewing Mr. Walker, plaintiff and several other employees, and he prepared a written report of that investigation for Mr. Sundeen.  In the report, Mr. Howey recommended that plaintiff be terminated because of his poor communications, mismanagement, intimidation, and unprofessional behavior. The report included the following specific findings and examples: plaintiff failed to address his complaints with Mr. Walker directly, and instead spoke to other employees and tried to elicit negative information about Mr. Walker; other employees saw no safety or attitude issues with Mr. Walker, and they believed that plaintiff had a long-standing personal issue with Mr. Walker; plaintiff showed a lack of leadership by speculating about the future of that flight group and causing undo tension; plaintiff caused a safety issue by conducting a negative appraisal of Mr. Walker and delivering the reprimand letter just before a flight by Mr. Walker; plaintiff caused safety issues by grilling pilots in the cockpit about other pilots; during Mr. Howey's investigation, plaintiff talked to individuals prior to their interviews to try to influence their statements, and he grilled individuals after their interviews about what was said; and two employees reported that plaintiff was saying damaging and untrue things about those employees to others.

On March 27, 2006, Mr. Sundeen and Mr. Howey met with plaintiff and discussed the issues in Mr. Howey's report.  At the conclusion of the meeting, Mr. Sundeen terminated plaintiff's employment.  Plaintiff was 66 years old at the time of his

termination.

## II.  <u>Summary Judgment Standards</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon

his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   ADEA Claim

Plaintiff claims that defendant discriminated against him on the basis of his age when it terminated him, in violation of the ADEA. Plaintiff concedes that he has no direct evidence that his termination was discriminatory. The Court therefore uses the *McDonnell Douglas* burden-shifting framework to evaluate plaintiff's claim based on indirect evidence of discrimination. *See Adamson v. Multi Community Diversified Servs.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). The Tenth Circuit has described this analysis as follows:

> This three-step analysis first requires the plaintiff to prove a prima facie case of discrimination. If plaintiff establishes a prima facie case, the burden of going forward shifts to the defendant to produce a legitimate

5

nondiscriminatory reason for its actions. If the defendant does so, the plaintiff must either show that his . . . age . . . was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext.

A plaintiff may establish pretext by showing that the employer's proffered reason for acting adversely towards him is unworthy of belief. Plaintiff may also survive summary judgment by introducing affirmative evidence of a discriminatory motive. The plaintiff does not have the burden of proving a defendant's proffered reasons were false, or that a discriminatory factor was the "sole" motivating factor in the employment decision. Instead, the employee must show that unlawful intent was a "determining factor" and that the decision violates the statute.

*Id.* at 1145-46 (citations and quotations omitted).[2]

A.     *Prima Facie Case*

Defendant first challenges plaintiff's ability to establish his prima facie case of

discrimination.

_____

[2]Defendant appears to argue, citing *Adamson*, that in the third step of the analysis plaintiff must provide evidence of both pretext and age discrimination. The Court rejects this argument. In *Adamson*, as set forth above, the Tenth Circuit makes clear that, once the plaintiff has made a prima facie case of discrimination, he need only establish pretext *or* discrimination to survive summary judgment. Pretext alone was not sufficient for one plaintiff in *Adamson* because he failed to satisfy the requirements for a prima facie case. *See Adamson*, 514 F.3d at 1146-47. In this case, a prima facie case plus evidence of pretext would create the necessary inference of discrimination. *See id.* at 1146 (purpose of prima facie case under *McDonnell Douglas* analysis "is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor"); *see also Hare v. Denver Merchandise Mart, Inc.*, 255 F. App'x 298, 305 (10th Cir. 2007) (discriminatory animus may be inferred from pretext, and plaintiff need not provide evidence that the real reason for termination was age-related; prima facie case plus pretext is sufficient, unless defendant meets heavy burden to show alternative source for discrepancies in reasons for termination, for instance by showing that the record *conclusively* revealed some other nondiscriminatory reason for the action or that there was *abundant and uncontroverted* independent evidence that no discrimination had occurred).

In termination cases, a prima facie case of age discrimination ordinarily requires the plaintiff to show that he or she was:  (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age.

*Adamson*, 514 F.3d at 1146.  Defendant concedes that plaintiff satisfies the first, third, and fourth prongs of this test, but it argues that plaintiff cannot satisfy the second prong. Specifically, defendant argues that plaintiff cannot establish that he was performing satisfactory work in light of its own evidence that plaintiff was terminated for poor performance.

The Tenth Circuit has rejected such an attack on a plaintiff's ability to make the required prima facie showing:

As we explained in *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115 (10th Cir. 1991), concluding that plaintiffs "did not establish a prima facie case based on the reasons for their discharge raises serious problems under the *McDonnell Douglas* analysis" because it "frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual and/or that age was the determining factor." 941 F.2d at 1119.  We therefore held that a plaintiff may meet the second element of "a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time."  *Id.* at 1121 (citations omitted).

*Bolton v. Sprint/United Mgmt. Co.*, 220 F. App'x 761, 766-67 (10th Cir. 2007).  In this case, defendant has not shown that at the time of his termination, plaintiff no longer possessed the necessary objective qualifications or had not held the position for a significant period of time; thus defendant failed to make its initial showing that plaintiff

cannot satisfy this standard.  In fact, it is undisputed that plaintiff held his position for over seven years.  Accordingly, the Court rejects this basis for summary judgment and concludes that plaintiff has established his prima facie case of age discrimination.

### B.    *Pretext*

Plaintiff has not challenged defendant's articulation of a legitimate nondiscriminatory reason for his termination, namely plaintiff's poor performance with respect to his management of his subordinates.  Thus, the burden shifts to plaintiff to show that his age was a determinative factor in his termination or that defendant's stated reasons for his termination are pretextual.

> Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.

*Bolton*, 220 F. App'x at 767 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).  The Court addresses in turn the evidence cited by plaintiff in an attempt to show pretext here.

### 1.    QUESTIONS CONCERNING RETIREMENT PLANS

Plaintiff first cites evidence that John Sundeen and Steve Hanna asked him about his retirement plans.  Plaintiff testified that in approximately September 2005, Mr. Sundeen and plaintiff were discussing the flight department, and Mr. Sundeen asked plaintiff, "[W]hat are your plans?  What are you thinking about doing?  Are you going to retire?"  After plaintiff indicated that he had no plans to retire, Mr. Sundeen asked, "If

8

you were to retire, how much notice would you be willing to give us so that we could make plans?"  Plaintiff answered, "Six months."  Plaintiff further testified that in approximately November 2005, Mr. Sundeen asked him "based on the previous conversation if I decided to retire when might I do it and who would I recommend to replace me."  Plaintiff responded that he had no present plans to retire, but that he would give adequate notice to allow for a transition, and plaintiff identified Steve Hanna as a possible replacement.  After plaintiff stated that he had no present plans to retire, Mr. Sundeen had a puzzled look on his face, which plaintiff interpreted as disappointment that plaintiff was not identifying a retirement date.  In neither conversation did Mr. Sundeen make any statements to suggest that plaintiff should consider retirement.  Mr. Sundeen testified that he asked plaintiff about his retirement plans because they were talking about long-term planning for the department, including whether to reduce the department by one plane.  Finally, plaintiff testified that one or two times per month, during the last year-and-a-half to two years of plaintiff's employment, Mr. Hanna asked when plaintiff planned to retire and whether plaintiff would recommend him as plaintiff's replacement.

This evidence is not sufficient to create a reasonable inference of discrimination in opposition to summary judgment.  The Tenth Circuit has held that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions;" rather, the plaintiff must demonstrate a nexus between the allegedly ageist comments and the termination decision.  *See Cone v. Longmont*

9

*United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).  This Court has previously acknowledged that "questions about an employee's retirement plans, standing alone, are generally insufficient to support an inference of age discrimination." *Holdren v. General Motors Corp.*, 1998 WL 990997, at *4 (D. Kan. Dec. 7, 1998) (citing cases); *see also Carter v. Newman Mem. Co. Hosp.*, 49 F. App'x 243, 246 (10th Cir. 2002) (under *Cone*, questions about intent to retire are stray remarks and do not create a jury issue absent evidence from which a reasonable jury could infer that discriminatory animus motivated the termination decision).

Plaintiff has not shown that these questions by Mr. Sundeen and Mr. Hanna were related to or immediately preceded the termination.  Therefore, the retirement inquiries are best characterized as stray remarks or isolated comments under *Cone*, and they do not create an inference of discrimination in themselves.[3]  Moreover, the comments by Mr. Hanna are not material because he was not a decision-maker with respect to plaintiff's termination. *See Cone*, 14 F.3d at 531.  For these reasons, this evidence is not sufficient to withstand summary judgment.

2.      COMMENT REGARDING FORGETFULNESS

Plaintiff next points to evidence that Mr. Sundeen's notes of a conversation with

---

[3]In *Holdren*, the inquiry about retirement was accompanied by other comments reflecting age-based animus and was made only three weeks prior to the challenged employment action, and the Court concluded that such evidence did create the necessary inference of pretext. *See Holdren*, 1998 WL 990997, at *4-5.  In this case, plaintiff has not provided similar supporting evidence, and Mr. Sundeen's inquiries about retirement were not related to and did not immediately precede the termination decision.

Mr. Hanna, held a few days after plaintiff's termination, contain the following statement about plaintiff: "Larry was becoming more forgetful in the last year – age?"  Mr. Sundeen testified that Mr. Hanna had suggested that plaintiff's age had caused forgetfulness, and that he has never brought up plaintiff's age in a conversation with Mr. Hanna.  Mr. Hanna testified that he had told Mr. Sundeen, in response to a question, that plaintiff was sometimes forgetful, and the two men discussed examples, but he did not recall that plaintiff's age had been mentioned.

There is no evidence that this comment related to plaintiff's termination or that plaintiff's forgetfulness was cited as a reason for his termination; thus, the alleged statement represents only an isolated comment under *Cone*.  Further, the evidence indicates only a statement by Mr. Hanna, and not by Mr. Sundeen, the decision-maker, and the statement is therefore immaterial.  *See id.*  Accordingly, the Court concludes that this evidence does not raise the necessary inference of discrimination.

### 3.    DRAFTING OF WALKER REPRIMAND

Plaintiff next cites evidence relating to the drafting of the letter of reprimand to Mr. Walker.  Plaintiff cites testimony from an HR employee that letters concerning an employee's performance would usually be handled by the HR department, and he argues that the directive to consult with the legal department about the contents of the letter violated that policy.  Plaintiff further argues that the legal department's suggested revisions made the letter much "harsher", which harshness caused Mr. Walker's complaint and thus prompted the investigation of plaintiff.  Plaintiff argues that Mr.

11

Sundeen and Mr. Howey, in investigating plaintiff, knew that the legal department had been responsible for the letter's contents.

This evidence also fails to raise the necessary question of fact for the jury. Plaintiff has not presented any evidence that his termination was based on the *contents* of the Walker reprimand letter; rather, the investigation report cited only the manner in which plaintiff delivered that letter to Mr. Walker. Nor has plaintiff provided any evidence that Mr. Sundeen or Mr. Howey referred plaintiff to the legal department in order to prompt a complaint by Mr. Walker, which would then allow an investigation of plaintiff as a pretext for terminating him because of his age. No reasonable jury could conclude from this evidence that the investigation was a sham or that defendant's stated reasons for the termination were pretextual.[4]

### 4.    REPORT OF INVESTIGATION OF PLAINTIFF

Plaintiff argues that exaggerated and unsupported findings by Mr. Howey from his investigation of plaintiff demonstrate that the investigation was not conducted in good faith, which in turn demonstrates that the reliance on that investigation for his termination was pretextual. In considering this argument, the Court is mindful of the

---

[4]Plaintiff also argues that the legal department's revisions depicted plaintiff's problems with Mr. Walker's performance as akin to piloting deficiencies of another pilot, while plaintiff in fact had no such piloting issues with Mr. Walker, and that the resulting investigation was therefore a sham because it was prompted by a complaint that plaintiff did not make. This argument is not supported by the evidence, however, because the Walker reprimand letter made no reference to piloting deficiencies. Moreover, as noted above, plaintiff's termination was not based on the contents of the Walker reprimand letter.

following standard:

> [T]he relevant inquiry is not whether the employer's proffered reasons
> were wise, fair, or correct, but whether it honestly believed those reasons
> and acted in good faith upon those beliefs.  Thus, the relevant "falsity"
> inquiry is whether the employer's stated reasons were held in good faith
> at the time of the discharge, even if they later prove to be untrue, or
> whether plaintiff can show that the employer's explanation was so weak,
> implausible, inconsistent or incoherent that a reasonable fact finder could
> conclude that it was not an honestly held belief but rather was subterfuge
> for discrimination.  Our reason for this rule is plain: our role is not to act
> as a "super personnel department," second guessing employers' honestly
> held (even if erroneous) business judgments.

*Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citations and quotations
omitted); *see also Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007)
(citing *Young* standard in ADEA case).  The Court concludes that Mr. Howey's findings
were not so inaccurate as to create an inference that the investigation was a sham or that
the stated reasons for Mr. Sundeen's termination of plaintiff were pretextual.  The Court
addresses each of plaintiff's five alleged inaccuracies in turn.

First, plaintiff argues that "Howey's report claimed the Foster reprimand cited
him for the same management issues for which Howey faulted him in the Walker
investigation, but he admitted in his deposition that it did not."   Mr. Howey's report
stated that plaintiff was given a reprimand "in May 2004 related to failure to properly
address performance issues with a pilot in his department."  The report further stated:
"This method of handling issues (that of talking to everyone but the person with the
issue) is a common practice of Robertson and was cited in his reprimand."  Mr. Howey
conceded in his deposition that the prior reprimand did not specifically refer to a practice

of "talking to everyone but the person with the issue."  The prior reprimand, however, did cite plaintiff for failing to address issues directly with his subordinate.  Thus, the statement in the report was not materially false, particularly in light of the fact that the actual contents of the prior reprimand would have been available to Mr. Sundeen, the decision-maker who actually terminated plaintiff.  The Court concludes that this minor mischaracterization in the report is not sufficient to create an inference that the investigation was a sham or pretextual.[5]

Second, plaintiff takes issue with the following portion of Mr. Howey's report:

> [Plaintiff] Robertson caused a potential safety issue by conducting the very negative appraisal of Walker just before a flight.  Further and compounding the safety issue, in that Robertson gave Walker the letter suggesting that Walker could lose his Waddell & Reed captaincy and be subject to discharge, just as he was entering the cockpit for a flight.

Plaintiff argues that these statements are inaccurate because "Howey knew the letter had been delivered during Walker's performance appraisal – which was an hour before his scheduled flight – and that Walker did not read it until he had landed in Denver much later."  In his deposition, Mr. Howey testified that he had been told by Steve Hanna that

---

[5]Plaintiff argues that Mr. Howey's report of his investigation is inadmissible because it contains hearsay and opinions.  The Court agrees with defendant that the report is admissible not to show the truth of the statements from other employees (i.e., that plaintiff actually behaved in that manner), but to show defendant's state of mind and beliefs concerning plaintiff when it terminated him.  *See Fester v. Farmer Bros. Co.*, 49 F. App'x 785, 789 (10th Cir. 2002) (relevant inquiry was whether decision-maker honestly believed findings in investigative report and acted in good faith on those beliefs, not whether findings were accurate; thus report was non-hearsay, and trial court abused discretion in excluding report).  Moreover, the Court notes that plaintiff himself refers to the report in attempting to show inaccuracies as evidence of pretext.

plaintiff had given Mr. Walker the letter of reprimand after a review given prior to Mr. Walker's boarding a plane, and that Mr. Walker was given the letter "while getting on a plane." Mr. Howey testified that he did not know how close actually to stepping on the plane Mr. Hanna meant in describing the delivery of the letter. Mr. Howey further testified that he had observed that it appeared to be contrary to good safety "to conduct such a negative appraisal before a flight and to send a letter with a pilot on a flight." Mr. Howey also conceded that he knew that Mr. Walker had not opened the letter until after the flight.

The Court concludes that these statements in the report were not so inaccurate as to create an inference that the investigation was a sham or pretextual. There is no evidence that Mr. Howey knew that Mr. Walker was given the letter well before the flight; rather, he accurately reported what he had been told about the delivery. He did omit that the letter had not been opened during or before the flight, but that omission is not material, as Mr. Howey's concern was the timing of the delivery of the letter (which could reasonably have implicated safety issues if Mr. Walker opened the letter before or during the flight or if he merely wondered about its contents during the flight).

Third, plaintiff takes issue with the report's finding that instead of speaking directly with Mr. Walker about performance issues, plaintiff "spoke to others in the flight crew trying to solicit information regarding 'negative attitudes' or 'safety' concerns regarding Walker." Plaintiff notes that Mr. Howey "did not report that the only department employee who provided any information on the topic dated the

commencement of [plaintiff's] questions to January 2006, just after he learned of the rumored cockpit confrontation involving Walker, and about which both plaintiff and Walker questioned their fellow pilots as to the source."

The evidence does not support this argument.  Mr. Howey testified that both Steve Hanna and Charlie Gosselin stated that plaintiff had pursued negative information about Mr. Walker for "months and months."  Mr. Howey's notes indicated that another employee stated that since January 1, 2006, plaintiff had been "pressing staff to give negative statements" about Mr. Walker; Mr. Howey testified that he actually understood the employee to mean that such questioning had taken place prior to 2006, but that the pressure was "ramped up" at the beginning of the year.  In light of this information provided to Mr. Howey, the statements in his report cannot reasonably be seen as false or misleading, and the Court concludes that a reasonable jury could not conclude that the investigation was a sham or pretextual from the omission of which plaintiff complains.

Fourth, plaintiff complains about the following findings in the report:

> Sometime after Steve Hanna interviewed with me, he was contacted by a pilot friend of his that said that [plaintiff] was saying damaging things about him, but that the pilot friend knows that what [plaintiff] is saying is not true.  Charlie [Gosselin] called me and told me that [plaintiff] is trashing his reputation for having come to me and related his observations.

Plaintiff argues that the report was inaccurate because it "omitted that such reports were unconfirmed and that the sources of the reports were anonymous."  Mr. Howey conceded in his deposition that he did not know who Mr. Hanna's friend was or try to verify his statements as reported by Mr. Hanna, and that Mr. Gosslin did not identify the source of

16

his information.  The lack of any further investigation by Mr. Howey regarding these statements, however, is apparent from the report, which contains no reference to any attempt to corroborate the statements; thus, the alleged omission is not material. Moreover, plaintiff has not provided any evidence suggesting that Mr. Howey should have doubted the credibility of the statements by Mr. Hanna and Mr. Gosselin; therefore, the failure of Mr. Howey to attempt to contact the unnamed sources does not raise a reasonable inference that the investigation was a sham or pretextual.

Fifth, the report stated that plaintiff had talked to individuals prior to their interviews with Mr. Howey to try to influence what they said, and that plaintiff would also "grill" individuals after their interviews to find out what had been discussed. Plaintiff notes that Mr. Howey conceded in his deposition that although some pilots had suggested that plaintiff had tried to influence other pilots about what they would tell Mr. Howey, no pilot had directly reported that he had personally experienced such conduct from plaintiff.  This testimony does not make the reports' statements on this subject false or misleading, however.  The fact that Mr. Howey believed the pilots' statements about plaintiff's conduct does not support a reasonable inference of pretext.

In summary, the alleged inaccuracies in Mr. Howey's report, which prove to have been trivial or nonexistent, do not undermine the report to the extent that a reasonable jury could infer that the investigation was a sham or pretextual.  As noted above, the relevant inquiry is not whether the report's findings were correct or in good judgment, but whether Mr. Howey actually believed those findings and acted in good faith.

17

Plaintiff has not provided any evidence that Mr. Howey intentionally misrepresented the results of his investigation or otherwise conducted his investigation in bad faith or as a pretext to disguise a discriminatory animus. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) (summary judgment appropriate where plaintiff provided no evidence that investigator deliberately withheld information from the decision-maker or otherwise misrepresented an honestly-held belief in the reasons for termination, or that the investigator had used her latitude in investigating the complaint to act on an alleged age bias).

Plaintiff's arguments about the accuracy of Mr. Howey's report also fail to create the necessary inference of pretext or discrimination because Mr. Howey was not the decision-maker who terminated plaintiff. The Tenth Circuit has adopted the "rubber-stamp" theory of liability based on bias or discrimination by a subordinate to the actual decision-maker. *See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 487-88 (10th Cir. 2006). To succeed on this theory, however, a plaintiff must establish more than mere "input" or "influence" in the decision-making process by the subordinate; rather, the plaintiff must show that the discriminatory report or recommendation by the subordinate caused the adverse employment action. *Id.* at 487. An employer can avoid liability by conducting an independent investigation of the allegations against an employee, thereby severing the causal link between the recommendation and the employment action. *Id.* at 488. Simply asking an employee for his version of events may defeat an inference of discrimination. *Id.*

18

In this case, plaintiff has not disputed that Mr. Sundeen made the decision to terminate plaintiff.  According to Mr. Sundeen's testimony, although Mr. Howey had recommended plaintiff's termination in his report, the final decision regarding the termination was not reached prior to meeting with plaintiff on March 27, 2006.  Mr. Sundeen wanted to discuss some issues with plaintiff.  Mr. Sundeen went into the meeting believing that plaintiff's employment would be ended by termination or resignation unless plaintiff could refute findings in the report.  Mr. Sundeen's notes of the meeting indicate that he and plaintiff reviewed the report and went through every issue.  Mr. Howey testified that he did not know that plaintiff would necessarily be terminated going into the March 27 meeting, and that Mr. Sundeen wanted to discuss the various issues with plaintiff.  Plaintiff has not cited any evidence to dispute that Mr. Sundeen actually discussed the issues in the report with plaintiff prior to his termination.[6]

Accordingly, the uncontroverted evidence reveals that Mr. Sundeen did not simply rely on Mr. Howey's report and recommendation to terminate plaintiff, but instead discussed the various issues with plaintiff before terminating him.  Because Mr. Sundeen, the decision-maker, conducted his own investigation, the causal link to Mr.

---

[6]In his statement of facts, plaintiff stated that Mr. Sundeen presented Mr. Howey's findings to plaintiff and repeatedly requested his resignation during this meeting. Plaintiff failed to provide a citation to the record to support that statement, however, even though he supplied other omitted citations in his sur-reply brief. Accordingly, the Court cannot consider this statement. Even if it could, however, the fact that Mr. Sundeen may have offered plaintiff the opportunity to resign throughout the meeting does not controvert the evidence that Mr. Sundeen conducted his own investigation in that meeting of the various issues raised in the report.

Howey's report was broken.  Consequently, even if plaintiff could establish that Mr. Howey's report contained material misrepresentations or omissions or that Mr. Howey's investigation was a sham or a pretext for his own discriminatory animus (plaintiff has not made such a showing), such evidence would not establish the necessary inference that Mr. Sundeen's investigation and reasons for termination were pretextual.  For instance, with respect to the alleged exaggerations and omissions in Mr. Howey's report, plaintiff has not shown that Mr. Sundeen knew that the report was inaccurate in any way but acted on its recommendation nonetheless.  Accordingly, plaintiff's complaints about Mr. Howey's report and investigation are not sufficient to withstand summary judgment.

### 5.      COMMENT REGARDING DEMOTION

Finally, plaintiff cites his own testimony that approximately three weeks prior to his termination, Mr. Howey called plaintiff and told him that defendant was going to demote plaintiff; and that when plaintiff responded that a demotion was unacceptable, Mr. Howey stated, "Well, then, I'm going to have to let you go."  Relying on *Fester*, plaintiff argues that this comment raises the inference that Mr. Howey's subsequent investigation was merely a sham.

The Court disagrees that this evidence creates the necessary inference of pretext. In *Fester*, the Tenth Circuit upheld a jury verdict for a plaintiff based on evidence that a decision-maker had decided to discharge the plaintiff prior to the completion of the investigation of the plaintiff and before interviewing the plaintiff, as well as other evidence of pretext.  *See Fester*, 49 F. App'x at 793.  In this case, Mr. Howey had

already interviewed plaintiff and Mssrs. Walker, Hanna, and Gosselin at the time of the alleged comment, and thus may have already obtained sufficient information to justify a demotion or even a termination.  Moreover, the alleged comment by Mr. Howey referred only to a decision to demote plaintiff (with termination only if plaintiff would not accept a demotion), while the investigation ultimately resulted in the termination of plaintiff, a much greater sanction.  Accordingly, this comment does not, by itself, create a reasonable inference that the remainder of the investigation was a sham or pretextual, and unlike the employee in *Fester*, plaintiff has been unable to provide other evidence of pretext.  Finally, Mr. Howey was not the decision-maker, and plaintiff has not provided evidence that Mr. Sundeen, who conducted his own investigation before terminating plaintiff, had reached his decision prior to the completion of the investigation by Mr. Howey.

For these reasons, plaintiff has failed to meet his burden of establishing pretext or discrimination under the third step of the *McDonnell Douglas* framework, and defendant is therefore entitled to summary judgment on plaintiff's claim under the ADEA.

### IV.    MHRA Claim

Plaintiff has also alleged age discrimination in violation of the MHRA.[7]  Mo. Rev.

---

[7]The Court exercises diversity jurisdiction over this claim.

Stat. § 213.055 prohibits discriminatory employment practices, including termination because of a person's age. To prevail under this statute, a plaintiff need not prove that discrimination was a substantial or determining factor in the employment decision; rather, he need only show that age was a "contributing factor" in the decision. *See Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819-20 (Mo. 2007). Under Missouri law, the burden-shifting *McDonnell Douglas* analysis does not apply; rather, to survive summary judgment, a plaintiff must demonstrate a genuine issue of material fact regarding whether age was a "contributing factor" in the termination decision. *See id.*; *see also Al-Birekdar v. DaimlerChrysler Corp.*, 2008 WL 341702, at *4 & n.1 (E.D. Mo. Feb. 5, 2008) (using *Daugherty* "contributing factor" standard instead of *McDonnell Douglas* framework in analyzing MHRA claim upon summary judgment).

Plaintiff relies on the same evidence to support his ADEA and MHRA claims. The Court concludes that such evidence does not create a reasonable inference that discrimination was a contributing factor in plaintiff's termination, for the same reasons that the evidence does not create an inference of discrimination or pretext, as set forth above with respect to plaintiff's federal claim. *See, e.g.*, *Jackson v. General Motors*, 2007 WL 4333379, at *10 (E.D. Mo. Dec. 7, 2007) (granting summary judgment under both *McDonnell Douglas* and *Daugherty* analyses on race discrimination claim where plaintiff did not provide sufficient evidence to raise an inference of discrimination or pretext). Accordingly, defendant is awarded summary judgment on plaintiff's MHRA claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 26) is **granted**, and judgment is ordered in favor of defendant against plaintiff on all claims.

IT IS SO ORDERED.

Dated this 23rd day of June, 2008, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge